43 F.3d 1188
 39 ERC 1929, 63 USLW 2405, 25 Envtl.
L. Rep. 20,486
 UNITED STATES of America, Plaintiff/Appellee,
v.
Larry GURLEY, Defendant/Appellant,
Betty Gurley; R.A. Caldwell; Gurley Refining Company;
Gurley Refining Company, Inc.; William Martin
Gurley, Defendants.
UNITED STATES of America, Plaintiff/Appellee,
v.
GURLEY REFINING COMPANY, INC.; William Martin Gurley,
Defendants/Appellants,
Larry Gurley; Betty Gurley; R.A. Caldwell; Gurley
Refining Company, Defendants.
 Nos. 93-2699, 93-2702.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 12, 1994.
Decided Dec. 28, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied in No.
93-2702 March 9, 1995.
 
 David Allan Gates, Little Rock, AR, argued (Marsha T. Foster, on the brief), for Larry Gurley.
 James W. Gentry, Jr., Chattanooga, TN, argued (Elton A. Rieves, IV, on the brief), for Gurley Refining Co. and William Martin Gurley.
 Jeffrey P. Kehne, Washington, DC, argued (Louis J. Schiffer, Richard Gladstein, Edward J. Shawaker and John Dugdale, on the brief), for appellee.
 Before HANSEN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and KOPF, District Judge.*
 HANSEN, Circuit Judge.
 
 
 1
 The Environmental Protection Agency (EPA), on behalf of the United States, brought this action to recover the costs of cleaning up a hazardous waste site near Edmondson, Arkansas. The district court entered judgment for the EPA, imposing liability for past costs ($1,786,502.92) and future costs (estimated at $6,000,000) on defendants Gurley Refining Company, Inc.; its principal shareholder and president, William Gurley; and an employee, Larry Gurley. These defendants appeal, raising several issues, the most significant of which are the argument that the present action is precluded by a prior action brought against the Gurley Refining Company, Inc., in 1983 and the argument that Larry Gurley's role in the company's disposal of hazardous waste was too tenuous to make him liable as an "operator" of a hazardous waste facility. We affirm in part and reverse in part.
 
 I.
 
 2
 The facts of this case are well stated in the district court's memorandum order, see United States v. Gurley Refining Co., 788 F.Supp. 1473, 1476-78 (E.D.Ark.1992), and we will merely summarize them here. From 1970 to 1975, the Gurley Refining Company (GRC) rerefined used motor oil. GRC treated the used motor oil with sulfuric acid, mixed it with clay to absorb impurities, filtered out the clay, and sold the resulting rerefined oil. GRC then disposed of an acidic sludge and the spent clay in a borrow pit[1] it had leased from R.A. Caldwell pursuant to a permit issued for that purpose by the Arkansas Department of Pollution Control and Ecology (ADPCE). Id. The wastes of the rerefining process contained hazardous materials such as barium, lead, zinc, PCBs, and sulfuric acid. (Appellee's Br. at 4.)
 
 
 3
 In October 1975, GRC discontinued its rerefining processes and stopped disposing of wastes at the pit. In 1978, the United States Fish and Wildlife Service discovered that contaminated water from the pit had spilled over and damaged nearby fish and waterfowl habitats. The Service reported this to the EPA, which performed some work on the pit to prevent future spillovers.
 
 
 4
 But in the spring of 1979, after heavy rains, the pit overflowed again, releasing about a half million gallons of oily water into the surrounding area. The EPA could not persuade Caldwell or GRC to clean up the pit, so later that year it again performed work on the site to contain and treat wastes. In 1983, the EPA brought an action against Caldwell and GRC under the Federal Water Pollution Control Act, also known as the Clean Water Act (CWA), 33 U.S.C. Secs. 1251-1376, to recover the costs it had incurred in 1979. In 1985, the district court entered judgment in favor of the EPA and against Caldwell and GRC in the amount of $76,758.60. See United States v. Caldwell, J-C-83-399, slip op. at 9 (E.D.Ark. Oct. 30, 1985), reprinted in Appellant GRC's & William Gurley's Br. at A37-A45. GRC did not appeal.
 
 
 5
 Meanwhile, in 1983, the pit was listed on the EPA's National Priorities List. In 1985, an investigation conducted on behalf of the EPA revealed that the site was still contaminated. In 1986, a feasibility study proposed four alternative courses of remedial action. The EPA chose the third alternative, which called for stabilization of the soil and contaminates, disposal of the soil and contaminates in an on-site landfill, backfilling of the excavated area, construction of flood protection, on-site treatment of contaminated water, and annual groundwater monitoring. Gurley Refining Co., 788 F.Supp. at 1477.
 
 
 6
 Then in 1987, the EPA brought this action to recover the costs, both past and future, of the remedial action it had adopted after the 1986 study. Before trial, defendant Betty Gurley was dismissed from the case, and defendant R.A. Caldwell settled with the EPA. Id. at 1476 n. 2. The matter was tried to the court for eight days in June and September of 1990. The district court entered judgment for the EPA on March 27, 1992, concluding that GRC, William Gurley, and Larry Gurley should be jointly and severally liable for cleanup costs, with prejudgment interest from September 10, 1990. The district court also entered a declaratory judgment that those three defendants shall be liable for the costs of all remedial action taken by the EPA in the future. The three defendants appeal.
 
 II.
 
 7
 In 1980, Congress passed the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. Secs. 9601-9675. Under the Act, persons who are responsible for the release of hazardous substances may be liable for the costs of removing or remedying the contamination, the costs associated with damage to natural resources, and the costs to human health. See id. Sec. 9607(a); see also Dravo Corp. v. Zuber, 13 F.3d 1222, 1225 (8th Cir.1994). The EPA may initiate a civil action to recover these costs. See 42 U.S.C. Secs. 9607(a), 9613(h).
 
 A.
 
 8
 Larry Gurley argues that he should not be held liable because, in short, he was merely an employee of GRC. He argues in the alternative that imposing liability on him for conduct that preceded CERCLA's enactment would violate the Due Process Clause.
 
 1.
 
 9
 Liability for the release of hazardous substances may be imposed on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. Sec. 9607(a)(2) (emphasis added). The EPA does not contend that Larry Gurley had an ownership interest in either GRC or the site of the facility. Thus, he can be held liable only if he is an "operator." Larry Gurley argues specifically that the term "operator" should be limited to those individuals who had the "authority, responsibility, and capacity to control the corporate conduct in question." (Appellant Larry Gurley's Br. at 11.) He contends that he did not have the authority to determine whether or how to dispose of hazardous wastes because he was not an officer, director, or shareholder in GRC and because his father, William Gurley, possessed nearly exclusive authority over GRC's operations.
 
 
 10
 CERCLA defines "owner or operator" simply as, "in the case of an onshore facility or an offshore facility, any person owning or operating such facility." Id. Sec. 9601(20)(A)(ii). It is clear that the term "person" may include individuals, see id. Sec. 9601(21), but it is not clear when an individual should be deemed to have "operated" a hazardous waste disposal facility. In United States v. Northeastern Pharm. & Chem. Co., 810 F.2d 726 (8th Cir.1986) (NEPACCO ), cert. denied, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987), we held that an individual could be held liable for the release of hazardous substances under a different subsection, which imposes liability on a person who "arranged for disposal or treatment ... of hazardous substances owned or possessed by such person," see 42 U.S.C. Sec. 9607(a)(3). We found that the individual defendant "possessed" the hazardous substances because he "had actual 'control' over the NEPACCO plant's hazardous substances." NEPACCO, 810 F.2d at 743. We also stated, "It is the authority to control the handling and disposal of hazardous substances that is critical under the statutory scheme." Id. Thus, we affirmed a finding that the individual had "possessed" hazardous substances on two closely related but distinct grounds: that the individual had "actual control" of the hazardous substances and that he had "authority to control" their disposal.
 
 
 11
 Federal courts have struggled with these two concepts when addressing the question of whether an individual may be found liable as an "operator" under Sec. 9607(a)(2). In some circuits, a plaintiff must prove that an individual defendant had actual responsibility for, involvement in, or control over the disposal of hazardous waste at a facility. See Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 421 (7th Cir.1994) (holding that plaintiff must allege that individual defendant "directly and personally engaged in conduct that led to the specific environmental damage at issue"); Riverside Market Devel. Corp. v. International Bldg. Prods., Inc., 931 F.2d 327, 330 (5th Cir.) (holding that proper focus is "the extent of [individual] defendant's personal participation in the alleged wrongful conduct"), cert. denied, --- U.S. ----, 112 S.Ct. 636, 116 L.Ed.2d 654 (1991); New York v. Shore Realty Corp., 759 F.2d 1032, 1052 (2nd Cir.1985) (holding that individual defendant was "operator" because he was "in charge of the operation of the facility"); see also Levin Metals Corp. v. Parr-Richmond Terminal Co., 781 F.Supp. 1454, 1457 (N.D.Cal.1991) ("an individual cannot be liable as an 'operator' under CERCLA Section 107(a)(2) [42 U.S.C. Sec. 9607(a)(2) ] unless that individual actually participates in the operation of the facility at which hazardous substances are disposed of, exercised control over the company immediately responsible for the operation of that facility, or is otherwise intimately involved in that company's operations").
 
 
 12
 On the other hand, in one circuit, a plaintiff can succeed by proving less than that; an individual defendant " 'need not have exercised actual control in order to qualify as [an] operator[s] under Sec. 9607(a)(2), so long as the authority to control the facility was present.' " United States v. Carolina Transformer Co., 978 F.2d 832, 836-37 (4th Cir.1992) (emphasis added) (quoting Nurad, Inc. v. Hooper & Sons Co., 966 F.2d 837, 842 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992)); see also Northwestern Mut. Life Ins. Co. v. Atlantic Research Corp., 847 F.Supp. 389, 397 (E.D.Va.1994) (holding that individual defendant may be liable if he has "the 'authority to control' activities on the facility"); Robertshaw Controls Co. v. Watts Regulator Co., 807 F.Supp. 144, 152-53 (D.Me.1992) (holding that liability is proper if individual defendant had authority such that he "could have prevented the hazardous waste discharge"); cf. Kelley v. Thomas Solvent Co., 727 F.Supp. 1532, 1543-44 (W.D.Mich.1989) (stating that court should "weigh the factors of the corporate individual's degree of authority" but also should consider "evidence of responsibility undertaken and neglected").
 
 
 13
 An individual defendant who has actual control over the operation of a facility presumably also has authority to control the operation of the facility, with the possible exception of an individual acting ultra vires, a situation not present in this case or in the cases cited above. Thus, in reality, the two approaches differ in that one requires a plaintiff to prove that the defendant both had the authority to control the operation of the facility and actually exercised that authority, while the other requires a plaintiff to prove only that a defendant had the authority to control the operation of the facility.
 
 
 14
 We believe that the latter approach is inconsistent with the term "operator," whose common meaning is "one that produces a physical effect or engages himself in the mechanical aspect of any process or activity." Webster's Third New Int'l Dictionary 1581 (1986). Likewise, the verb "to operate" means "to perform a work or labor," to "exert power or influence," to "produce an effect," "to cause to occur," or to "bring about by or as if by the exertion of positive effort or influence." Id. at 1580-81. These definitions connote some type of action or affirmative conduct, an element not required by those courts that ask only whether a defendant had the authority to control the operation of the facility. We prefer not to interpret the statute in a manner that would produce the anomalous result of imposing CERCLA liability on an "operator" who in fact never "operated" a facility. Thus, we hold that an individual may not be held liable as an "operator" under Sec. 9607(a)(2) unless he or she (1) had authority to determine whether hazardous wastes would be disposed of and to determine the method of disposal and (2) actually exercised that authority, either by personally performing the tasks necessary to dispose of the hazardous wastes or by directing others to perform those tasks. We believe that this rule is the wiser of the two choices reflected in the existing case law and is faithful to our closely analogous decision in NEPACCO.
 
 
 15
 The district court made oral findings that Larry Gurley "personally participated in the disposal of the hazardous substances in question in the pit that is involved in this litigation" and that he "had extensive authority in an effort to implement the policies and practices of the corporate entity, which included the disposal of these hazardous substances." (Trial Tr. at 210-11.) In fact, the district court found those facts to be "crystal clear." Id. These findings address both prongs of the standard we have set out above. We review the district court's findings for clear error. See Fed.R.Civ.P. 52(a).
 
 
 16
 The record reveals that GRC had approximately six employees from 1970 to 1975 and that William Gurley, who was the principal shareholder, had ultimate responsibility for the business and took an active role in its management. In particular, William Gurley negotiated the lease with R.A. Caldwell for the property that later contained the pit, oversaw construction of the disposal facility, and directed employees to dispose of rerefining wastes there. The record also reveals that Larry Gurley began working in the rerefining plant in 1969 after his graduation from college. In that role, he helped load the trucks that hauled hazardous wastes to the pit. In 1972, he moved into the administrative offices, where he served as GRC's purchasing agent.
 
 
 17
 But several parts of the record also reveal that Larry Gurley's duties were broader than just purchasing. First, Larry Gurley testified in 1983 in Caldwell v. Gurley Refining Co., 533 F.Supp. 252 (E.D.Ark.1982), aff'd, 755 F.2d 645 (8th Cir.1985), that he eventually became "director of operations," a job which "basically put me in control of the day to day operations of the plant and anything that pertains to that." (Appellee's App. at 41.) He testified that his father tended to other businesses while he took care of GRC. (Id.) Second, when the ADPCE contacted GRC in 1973 to express its concern about the pit, Larry Gurley personally responded in a letter that said, "I received your letter concerning the pit where we dump our waste material. I made a visual inspection of the pit area today." (Id. at 1.) Third, Larry Gurley testified in 1983 that he "would have to take responsibility for" installing a pump and hose in the pit in 1974 that caused ADPCE to complain. (Id. at 45-46.) Fourth, in 1974, Larry Gurley personally responded to a letter from the West Memphis, Arkansas, City Attorney concerning the discharge of oil from the pit into the surrounding area. (Id. at 2-3.) Fifth and finally, Larry Gurley's responsibility for waste disposal is evidenced by the role he played in closing down the pit and filing reports with the ADPCE. He personally sent at least one letter to the ADPCE, (id. at 9), and he wrote and signed a report concerning the closure of the pit. He testified that the report reflected an engineer's recommendations and GRC's agreement with the ADPCE, which he apparently had negotiated. (Id. at 49-50).
 
 
 18
 Although Larry Gurley argues that he acted as a mere "wordsmith" for his father, (Appellant Larry Gurley's Reply Br. at 9), we are not convinced. The letters were sent under Larry Gurley's name. In fact, William Gurley testified in 1983 that Larry Gurley bore responsibility for the report filed with the ADPCE because "[h]e was operational manager; he had the latitude to make decisions of this kind." (Id. at 39.) Although Larry Gurley testified at the trial of this case that he simply followed William Gurley's directions on these matters, it is apparent that he had substantial responsibilities of his own between 1972 and 1975. The district court, which read the transcripts of the 1983 trial and heard the testimony of Larry Gurley and William Gurley at the trial of this action, reasonably concluded that Larry Gurley "personally participated in the disposal of the hazardous substances" and "had extensive authority" over GRC's disposal of hazardous wastes.
 
 
 19
 We think Larry Gurley's argument places too much emphasis on his status within GRC and not enough emphasis on his actual activities. Although he was not an officer, director, or shareholder, he nonetheless had substantial responsibilities for GRC's waste disposal. Perhaps persons who are officers, directors, or shareholders are more likely to cause a company to dispose of hazardous wastes, but we decline to confer immunity on all persons who do not hold such positions. An individual defendant's responsibility for the disposal of hazardous waste should be judged on a case-by-case basis. In this case, the evidence clearly and strongly supports the district court's findings that Larry Gurley had authority to determine GRC's hazardous waste disposal activities and that he actually exercised that authority.
 
 
 20
 For these reasons, the district court did not err when it found that Larry Gurley was liable as an "operator." See 42 U.S.C. Sec. 9607(a)(2).
 
 2.
 
 21
 Larry Gurley's second argument, that the imposition of liability for conduct that preceded CERCLA's effective date violates due process, is squarely foreclosed by NEPACCO, where we held that CERCLA was intended to apply retroactively and that such retroactive application does not violate the Due Process Clause. 810 F.2d at 732-34. For due process purposes, Larry Gurley's circumstances are no different from the circumstances of the defendants in NEPACCO.
 
 B.
 
 22
 GRC and William Gurley argue that the district court's judgment should be reversed because (1) under the res judicata doctrine, the EPA's present action is precluded by the CWA action it brought in 1983; (2) under the collateral estoppel doctrine, the EPA is precluded by positions it took in the prior action from proving the appellants' liability in this action; (3) the waste deposited at the pit falls within CERCLA's petroleum exclusion; (4) the district court erred by granting partial summary judgment; (5) the district court erred when it admitted certain exhibits into evidence; (6) the district court erred when it included attorney fees in the award of damages; (7) and the EPA acted arbitrarily and capriciously when it sought to recover its cleanup costs from the appellants. Larry Gurley joins in these arguments, incorporating them by reference. (See Appellant Larry Gurley's Br. at vii n. 1.)
 
 1.
 
 23
 The appellants first argue that this action is barred because the EPA earlier pursued a CWA action against GRC. Under the res judicata doctrine, which also is known as claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). A prior judgment is binding " ' "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." ' " Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 579, 94 S.Ct. 806, 812, 39 L.Ed.2d 9 (1974) (quoting Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (quoting Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195 (1876))); see also Lane v. Peterson, 899 F.2d 737, 741 (8th Cir.) ("res judicata precludes the relitigation of a claim on grounds that were raised or could have been raised in the prior action"), cert. denied, 498 U.S. 823, 111 S.Ct. 74, 112 L.Ed.2d 48 (1990). Here, the parties essentially agree that the prior case went to "final judgment" and that GRC was a party to it. Thus, whether res judicata bars the present action depends on whether the present action presents the "same cause of action" as the EPA presented in its 1983 action and on whether these appellants may assert the defense.
 
 
 24
 a.
 
 
 25
 Whether the present action is the "same cause of action" as the prior action depends on whether it "arises out of the same nucleus of operative facts as the prior claim." Lane, 899 F.2d at 742; see also Reyher v. Champion Int'l Corp., 975 F.2d 483, 487 (8th Cir.1992). The legal theories of the two claims are relatively insignificant because "a litigant cannot attempt to relitigate the same claim under a different legal theory of recovery." Poe v. John Deere Co., 695 F.2d 1103, 1105 (8th Cir.1982); Ruple v. City of Vermillion, 714 F.2d 860, 861 (8th Cir.1983); see also Restatement (Second) of Judgments Sec. 24 cmt. c (1982), quoted in Poe, 695 F.2d at 1106 n. 5. To determine whether the present claim and the prior claim constitute the same claim, we consider " 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations...." Lane, 899 F.2d at 742 (quoting Restatement (Second) of Judgments Sec. 24(2) (1980)).
 
 
 26
 Here, the present action and the prior action focussed on the same underlying facts. Each action concerned the appellants' disposal of hazardous waste in the borrow pit on the Caldwell property in the 1970s and the later release of those wastes. Thus, they are closely "related in time, space, [and] origin." Id. Furthermore, they "form a convenient trial unit" because each action depends on the same evidence of appellants' actions. In fact, in the present action, the EPA introduced into evidence transcripts of testimony from the prior CWA action. (See Appellee's App. at 71-87.)
 
 
 27
 The district court reasoned that res judicata does not apply because the prior action concerned the EPA's cleanup activities in the 1970s while the present action concerned the EPA's cleanup activities in the 1980s. See 788 F.Supp. at 1479. We believe that the district court improperly focussed on the plaintiff's conduct when it identified the underlying facts. " 'In the final analysis the test would seem to be whether the wrong for which redress is sought is the same in both actions.' " Roach v. Teamsters Local Union No. 688, 595 F.2d 446, 449 (8th Cir.1979) (emphasis added) (quoting Woodbury v. Porter, 158 F.2d 194, 195 (8th Cir.1946)). A "claim" should be determined not by the actions of a plaintiff vindicating its rights but by the conduct or alleged conduct of a defendant breaching those rights. See Supporters to Oppose Pollution, Inc. v. Heritage Group, 973 F.2d 1320, 1326 (7th Cir.1992) (holding that RCRA action is barred by prior RCRA action because, in part, "new evidence of injury differs from a new wrong").
 
 
 28
 The district court also reasoned that res judicata does not apply because
 
 
 29
 CERCLA itself contemplates that the two actions can be brought, and that [the] first will not bar the second. Pursuant to Section 113(g)(2), the United States may bring successive actions to recover further response costs or damages. 42 U.S.C. Sec. 9613(g)(2). Thus, according the language of the statute, the United States did not have to bring its section 107 action at the time it brought its action under the Clean Water Act.
 
 
 30
 788 F.Supp. at 1479. We believe the district court's conclusion--that the EPA may pursue both a CWA action and a CERCLA action to right the same wrong--is not supported by the statute, which permits only successive CERCLA actions, i.e., one CERCLA action after another CERCLA action. The EPA essentially concedes that Sec. 9613(g)(2) is limited in this way, but it urges us to give the statute a "generous interpretation" on the ground that "there is no reason to think that Congress would have intended a different result where the initial judgment awarded the costs of a CWA removal action rather than a CERCLA removal action." (Appellee's Br. at 14.) We decline to extend Sec. 9613(g)(2) beyond its self-defined scope and instead choose to apply the res judicata doctrine in a straightforward manner. "There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.' " Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (quoting Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946)); see also id. ("The Court of Appeals' reliance on 'public policy' is similarly misplaced.")
 
 
 31
 We understand that cleaning up hazardous wastes can be time-consuming and that in this case the scope of the cleanup was not known until April 1986 when the choice was made by EPA among the four alternative courses of action outlined by the feasibility study, and we also understand that the EPA's CWA claim was subject to a statute of limitations. But these facts do not relieve the EPA of its obligation to abide by the requirements of the res judicata doctrine. The EPA could have asserted a CERCLA claim when it filed the CWA action in December 1983 or while that case was pending, see Fed.R.Civ.P. 15. In fact, the EPA asserts that "[c]ommunications with the defendants, aimed at persuading them to assume responsibility for the response, continued throughout this period." (Appellee's Br. at 16.) The appellants' release of hazardous waste in the late 1970s, combined with the passage of CERCLA in 1980, made the present action possible in 1983. Cf. United States v. Fisher, 864 F.2d 434, 439 (7th Cir.1988) (holding that CERCLA action was not barred by res judicata because defendant allegedly released additional hazardous substances after prior action was completed and because statutory amendments created rights that could not have been asserted at time of prior action). The EPA chose to pursue a CWA action in 1983, and that choice precluded it from pursuing a subsequent CERCLA action for the same wrong in 1987.
 
 
 32
 Our conclusion that the EPA asserts the same claim in this action that it asserted in the prior action is consistent with analogous cases from this circuit and other circuits. See Johnson v. SCA Disposal Servs., Inc., 931 F.2d 970, 974-77 (1st Cir.1991) (holding that negligent misrepresentation action filed before plaintiff incurred cleanup expenses precluded later CERCLA reimbursement action); United States Envtl. Protection Agency v. City of Green Forest, 921 F.2d 1394, 1403-05 (8th Cir.1990) (holding that intervening citizens' CWA action was precluded by consent decree entered into by EPA and defendant), cert. denied, 502 U.S. 956, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991); Aliff v. Joy Mfg. Co., 914 F.2d 39, 42-44 (4th Cir.1990) (holding that false representation suit precluded later CERCLA reimbursement action). Our conclusion also is consistent with the purpose of the res judicata doctrine: to protect defendants "from the expense and vexation attending multiple lawsuits," to "conserve[ ] judicial resources," and to "foster[ ] reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana, 440 U.S. at 153-54, 99 S.Ct. at 974; see also Nevada v. United States, 463 U.S. 110, 129 n. 10, 103 S.Ct. 2906, 2918 n. 10, 77 L.Ed.2d 509 (1983) ("The policies advanced by the doctrine of res judicata perhaps are at their zenith in cases concerning real property, land and water.").
 
 
 33
 b.
 
 
 34
 GRC may assert the defense of res judicata because it was a party to the prior action. Neither William Gurley nor Larry Gurley, however, were parties to the prior action. Thus, each of them may assert the defense only if he is a "privy" to GRC. See Montana, 440 U.S. at 153, 99 S.Ct. at 973. A person is in privity with another person if he has " 'a close relationship, bordering on near identity.' " Headley v. Bacon, 828 F.2d 1272, 1276-79 (8th Cir.1987).
 
 
 35
 As a general rule, "[c]orporations are treated as entities separate from their officers, directors, and shareholders for purposes of preclusion just as for other purposes. Without more, judgments entered in actions against any one of them are not binding on any other." Charles Alan Wright, Arthor R. Miller & Edward H. Cooper, Federal Practice and Procedure Sec. 4460, at 533 (1981). As an exception to this general rule, directors, officers, and shareholders may be in privity with a corporation and thereby assert a res judicata defense if "they are named as defendants solely in their capacity as directors," officers, and shareholders. See Oglala Sioux Tribe v. Homestake Mining Co., 722 F.2d 1407, 1410 n. 3 (8th Cir.1983); cf. Headley, 828 F.2d at 1276-79 (holding that prior action against city did not bar subsequent action against police chief in his personal capacity); Micklus v. Greer, 705 F.2d 314, 316-17 (8th Cir.1983) (holding that prior actions against government officials barred subsequent action against another government official in her official capacity). Here, William Gurley is the principal shareholder, the president, and one of two directors of GRC. The only other director and the only other shareholder is his wife, Betty Gurley. It is undisputed that the district court imposed liability on him not in his capacity as principal shareholder, president, and director, but as an individual who meets Sec. 9607(a)(2)'s definition of "operator." Thus, William Gurley is not in privity with GRC and may not assert the defense of res judicata. See Oglala Sioux Tribe, 722 F.2d at 1410 n. 3.
 
 
 36
 As a general rule, "litigation by an employer is not binding on employees." 18 Wright, Miller & Cooper, supra, Sec. 4460, at 531; see also Headley, 828 F.2d at 1276. Larry Gurley had and has no ownership interest in GRC. As an employee, he is even more removed from GRC's interests than is William Gurley. Thus, he is not in privity with GRC and may not assert the defense of res judicata.
 
 
 37
 In sum, the EPA was precluded from bringing this action against GRC. The EPA was not precluded from bringing this action against William Gurley and Larry Gurley.
 
 2.
 
 38
 The appellants next argue that the EPA is precluded from proving liability in this action by certain positions it took in the CWA action. The appellants specifically contend (1) that the EPA should be precluded from proving that CERCLA's petroleum exclusion does not apply because the EPA proved in the prior action that GRC had disposed of oil and (2) that the EPA should be precluded from proving that William Gurley and Larry Gurley were "operators" under Sec. 9607(a)(2) because the EPA had proved in the prior action that GRC was an "operator."
 
 
 39
 Under the doctrine of collateral estoppel, which also is known as issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana, 440 U.S. at 153, 99 S.Ct. at 973. The appellants were entitled to rely on collateral estoppel in this case if
 
 
 40
 "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue."
 
 
 41
 Arkla Exploration Co. v. Texas Oil & Gas Corp., 734 F.2d 347, 356 (8th Cir.1984) (quoting Oldham v. Pritchett, 599 F.2d 274, 279 (8th Cir.1979)), cert. denied, 469 U.S. 1158, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985).[2]
 
 
 42
 The appellants' first contention stumbles on the requirement that the issue in the present case be identical to the issue in the prior case. See Aetna Cas. & Surety Co. v. General Dynamics Corp., 968 F.2d 707, 711 (8th Cir.1992). In the prior action, the EPA sought to prove, and did prove, that GRC had disposed of either "hazardous substances" or "oil." See 33 U.S.C. Sec. 1321(b)(1). Under the CWA, "oil" is defined as "oil of any kind or in any form, including, but not limited to, petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil." Id. Sec. 1321(a)(1). In this action, GRC sought to prove that it had disposed of "petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F)." 42 U.S.C. Sec. 9601(14). Although these two definitions may overlap to some degree, a substance that is included in CWA's definition of "oil" is not necessarily exempted from CERCLA's definition of "petroleum." See infra part II.B.3. Thus, the issue in the prior case and the issue in the present case are not identical, and the appellants may not assert collateral estoppel on this issue.
 
 
 43
 The appellants' second contention also fails. Whether GRC was an "operator" under CWA in the prior action is distinct from the question of whether William Gurley and Larry Gurley were "operators" under CERCLA. Thus, the issue in the prior case and the issue in the present case are not identical, and the appellants may not assert collateral estoppel on this issue.
 
 
 44
 In sum, the EPA was not precluded from proving the necessary elements of GRC's, William Gurley's, and Larry Gurley's liability.
 
 3.
 
 45
 The appellants next argue that the wastes they deposited at the pit fall within CERCLA's petroleum exclusion, which states, in part: "The term ['hazardous substances'] does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F)...." 42 U.S.C. Sec. 9601(14).
 
 
 46
 A petroleum product may be exempted from CERCLA " 'even though certain of its indigenous components and certain additives [added] during the refining process have themselves been designated as hazardous substances within the meaning of CERCLA.' " Cose v. Getty Oil Co., 4 F.3d 700, 704 (9th Cir.1993) (emphasis omitted) (quoting Wilshire Westwood Assocs. v. Atlantic Richfield Corp., 881 F.2d 801, 810 (9th Cir.1989)). However, " 'hazardous substances which are added to petroleum or which increase in concentration solely as a result of contamination of the petroleum during use are not part of the "petroleum" and thus are not excluded from CERCLA.' " Southern Pacific Transp. Co. v. California, 790 F.Supp. 983, 986 (C.D.Cal.1991) (quoting EPA General Counsel, Scope of the CERCLA Petroleum Exclusion Under Sections 101(14) and 104(a)(2) 5 (July 31, 1987)); see also Cose, 4 F.3d at 704 (citing 50 Fed.Reg. 13,460 (Apr. 4, 1985)); United States v. Alcan Aluminum Corp., 964 F.2d 252, 266 (3d Cir.1992); United States v. Amtreco, Inc., 846 F.Supp. 1578, 1584-85 (M.D.Ga.1994).
 
 
 47
 Here, the appellants disposed of rerefining wastes that consisted of oil, clay, barium, lead, zinc, PCBs, and sulfuric acid. The EPA asserts that PCBs and sulfuric acid do not naturally occur in crude oil. The EPA also points out that William Gurley testified that he used sulfuric acid in the rerefining process. (Appellee's Br. at 22 n. 22.) The appellants have not rebutted these statements in their reply brief but rather have chosen to argue for an interpretation of the statute that is at odds with the case law we have cited above. Thus, we conclude that the waste deposited at the pit does not fit within CERCLA's petroleum exclusion.
 
 4.
 
 48
 The appellants next argue that the district court erred when it included attorney fees (in the form of payroll expenses for employees of the EPA and the Department of Justice) in its award of damages. See 788 F.Supp. at 1483. The appellants objected to these amounts on the ground that they were attributable in part to the EPA's actions against R.A. Caldwell and Betty Gurley, both of which were dismissed, and because the EPA did not identify the portions that were attributable to the appellants. The district court overruled the objection. Id. at 1484. The appellants renew their argument here, contending that the district court erred by including "expenses of $75,925.80 shown on Plaintiff's Exhibit 87 and the $13,497.33 of expenses shown on Plaintiff's Exhibit 89." (Appellants GRC & William Gurley's Br. at 46.)
 
 
 49
 A party responsible for the release of hazardous substances may be held liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. Sec. 9607(a)(4)(B). "The terms 'respond' or 'response' mean remove, removal, remedy, and remedial action," and these terms include "enforcement activities related thereto." Id. Sec. 9601(25). The Supreme Court recently held that a private party may recover attorney fees associated with identifying other potentially responsible parties. Key Tronic Corp. v. United States, --- U.S. ----, ----, 114 S.Ct. 1960, 1967, 128 L.Ed.2d 797 (1994). The Court reasoned, "Tracking down other responsible solvent polluters increases the probability that a cleanup will be effective and get paid for. Key Tronic is therefore quite right to claim that such efforts significantly benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs." Id.
 
 
 50
 In this case, the objected-to attorney fees were associated with identifying R.A. Caldwell and Betty Gurley as potentially responsible parties. As such, they were a necessary part of the EPA's legitimate enforcement activities. They are not related to the EPA's status as a prevailing party in this action. The EPA's attorney fees in this case "significantly benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs." Id. In fact, because the EPA is the primary enforcer of CERCLA, the fees in this case arguably served a statutory purpose more so than did the fees in Key Tronic, where a private party sought to recover its attorney fees. See id. at ----, 114 S.Ct. at 1965 (noting that CERCLA did not expressly authorize private actions until 1986 amendments). Thus, the district court did not err by including the objected-to amounts in its award of damages.
 
 5.
 
 51
 We have fully considered the remaining issues jointly raised by the appellants, and we conclude that they are without merit.
 
 III.
 
 52
 In conclusion, the district court erred when it imposed liability on the Gurley Refining Company because the EPA's action was precluded by an earlier action that was based on the same underlying facts. The district court did not err when it imposed liability on William Gurley and on Larry Gurley. The district court's judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.[3]
 
 
 53
 FLOYD R. GIBSON, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 54
 I agree that the district court did not err in finding that Larry Gurley had acted as more than a mere employee of GRC. The record demonstrates that Larry Gurley had extensive authority over the company's daily operations and that he personally participated in and monitored the waste disposal process. I therefore concur in the majority's conclusion that the district court did not err in imposing liability on Larry Gurley.
 
 
 55
 However, I do not believe that the CWA action brought by the EPA in 1983 prevented it from pursuing this CERCLA action against GRC. As the majority notes, the doctrine of res judicata precludes the relitigation of a claim on grounds that were raised or could have been raised in the prior action. Ante at 1195. Because I do not believe that the CERCLA action could have been properly raised in the prior litigation, I respectfully dissent from this portion of the majority's opinion.
 
 
 56
 The majority acknowledges that the EPA faced a statute of limitations problem in recouping expenditures from the 1978 and 1979 removal efforts at the pit, ante at 1196-97, but concludes that the EPA could have asserted a CERCLA claim when it filed the CWA action in December 1983 or while that case was pending. However, the results of the EPA's feasibility study were not released until April 1986, three years after the CWA action was filed and six months after the entry of the district court's first judgment against GRC. In fact, the majority admits that "the scope of the cleanup was not known until April 1986." Ante at 1196.
 
 
 57
 I agree with the EPA's argument that a CERCLA remedial action filed in conjunction with the CWA litigation would have been premature. Thus, I would conclude the EPA was not precluded from bringing this action against GRC and that the district court did not err in imposing liability. In all other respects, I concur in the majority's opinion.
 
 
 
 *
 The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation
 
 
 [1]
 A "borrow pit" is "an excavated area where material (as earth) has been borrowed to be used as fill at another location." Webster's Third New Int'l Dictionary 257 (1986)
 
 
 [2]
 Although mutuality generally is not required for collateral estoppel, the EPA argues, in part, that William Gurley and Larry Gurley should not be permitted to assert collateral estoppel because they were not parties to the prior action. This argument rests on an unsettled issue of law. Compare United States v. Mendoza, 464 U.S. 154, 162, 104 S.Ct. 568, 573, 78 L.Ed.2d 379 (1984) (holding that nonmutual offensive collateral estoppel may not be asserted against the government), with United States v. Stauffer Chem. Co., 464 U.S. 165, 174, 104 S.Ct. 575, 580, 78 L.Ed.2d 388 (1984) (holding that mutual defensive collateral estoppel may be asserted against the government). Nonetheless, we need not reach the issue because we can resolve this part of the appeal on other grounds
 
 
 [3]
 On January 31, 1994, counsel for the EPA filed a letter calling our attention to additional authorities, pursuant to Fed.R.App.P. 28(j). On February 4, 1994, counsel for GRC and William Gurley filed a two-page response challenging the relevance and strength of the EPA's additional authorities. Because the responsive letter does not comply with Rule 28(j)'s "without argument" requirement, we strike it from the record