United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-3092MN

_____

National Association for the      \*
Advancement of Colored People,      \*
Minneapolis Branch on behalf of      \*
themselves and all others similarly      \*
situated; Bryston Hill, by his next friend      \*
Lisa Hill; Sophie Krahnke, by her next      \*
friends Steven Krahnke and Jane      \*
McLeod; Miquel McElroy, by his next      \*
friend Annie Pearl McElroy; Gregory      \*
McFarland, by his next friend Linda      \*
McFarland; Solveig Mebust; Anna      \*    Appeal from the United States
Mebust, by their next friends Bruce      \*    District Court for the District of
Lynn Mebust and Kirsten Ann Scribner      \*    Minnesota.
Mebust; Diamond Porter, by his next      \*
friend Jamie Porter,      \*
     \*
           Appellants,      \*
     \*
    v.      \*
     \*
Metropolitan Council, a Public Body      \*
Corporate and Politic,      \*
     \*
           Appellee.      \*

_____

Submitted: May 21, 1997
Filed: September 17, 1997

_____

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

_____

FAGG, Circuit Judge.

The Minneapolis Branch of the National Association for the Advancement of Colored People (NAACP) and six Minneapolis schoolchildren, on behalf of all Minneapolis public school students (the student class), filed this class action in Hennepin County District Court against the Metropolitan Council (Met Council) and twenty-one state officials and entities (the state defendants), asserting claims under the Minnesota Constitution. The Met Council, an administrative agency that coordinates planning and development in the Minneapolis-St. Paul metropolitan area, removed the case to federal district court. The NAACP and the student class moved to remand the case to state court. The district court remanded all claims against the state defendants, but denied the motion to remand claims against the Met Council. The district court based its removal jurisdiction on the All Writs Act, 28 U.S.C. § 1651 (1994), and the artful pleading doctrine recognized in Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 397 n.2 (1981). The district court then granted the Met Council's motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against it as precluded by an earlier federal judgment. The NAACP and the student class appeal, contending their claims against the Met Council were not removable, and even if they were, the district court improperly applied federal res judicata law because this case and the earlier lawsuit involve different causes of action against the Met Council as well as different parties.

The issues in this appeal spring from the relation of this action to an earlier class action, Hollman v. Cisneros, brought in federal court by the NAACP and a class consisting of minority persons and their families living in, or applying for, low-income housing in Minneapolis (the Hollman class). Filed in 1992, the Hollman lawsuit claimed public housing in Minneapolis was concentrated in racially segregated neighborhoods. The NAACP and the Hollman class contended the Met Council had

violated the federal Fair Housing Act by failing to encourage development of low-income housing in Twin Cities' suburbs, as well as by approving funding for suburban sewer and road projects and thus "accelerat[ing] the polarization of the metro area by income and race." The lawsuit was settled by consent decree in Hollman v. Cisneros, Civ. No. 4-92-712 (D. Minn. filed Apr. 21, 1995). In the Hollman decree, the Met Council agreed to undertake numerous complex responsibilities to help "achieve a metropolitan distribution of affordable housing." Among these, the Met Council agreed to consider low-income housing distribution in its "decisions and recommendations regarding the . . . funding, construction, or approval of regional wastewater and transportation facilities." The parties agreed to submit periodic progress reports to the district court, and the district court retained jurisdiction to issue "such further orders as may be necessary or appropriate for the enforcement of this Decree."

Six months after the district court entered judgment in Hollman, the NAACP filed this lawsuit in state court "on behalf of a plaintiff class consisting of all students enrolled . . . in the Minneapolis public schools," which necessarily includes students who live in low-income housing and belong to the Hollman class. The plaintiffs (appellants before this court) claimed that because the Minneapolis public schools have disproportionate enrollments of poor and minority students, generating "negative effects" that "depress[] . . . educational achievement," Minneapolis public school students as a whole are being denied their right to receive an adequate education in violation of the Education and Equal Protection Clauses of the Minnesota Constitution. See Skeen v. State, 505 N.W.2d 299, 313 (Minn. 1993) (recognizing education as a fundamental right under the state constitution). The class-action complaint linked school enrollments to housing, alleging the defendants, including the Met Council, had "adopted . . . policies and practices that result in housing segregated by race and socioeconomic status in the metropolitan area, . . . result[ing] in segregation . . . in the Minneapolis public schools." The plaintiffs objected to excessive spending on suburban infrastructure and to "transportation policies that . . . enable[] 'white flight' to suburbs," and faulted the Met Council for failing "to require . . . suburban

communities . . . to promote the development of low and moderate income housing."
In sustaining removal of, and then dismissing, the claims against the Met Council, the district court found the claims "focus exclusively on [the Met Council's] housing policies and practices, the subject of the Hollman lawsuit."

We consider first whether the district court properly exercised removal jurisdiction under the authority granted federal courts by the All Writs Act to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Although the All Writs Act is not an independent grant of jurisdiction, see White v. National Football League, 41 F.3d 402, 409 (8th Cir. 1994), the Act empowers a federal court "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained," United States v. New York Tel. Co., 434 U.S. 159, 172 (1977).  There is no dispute the district court properly obtained jurisdiction in Hollman.  Under the terms of the Hollman decree, the district court retains jurisdiction to supervise compliance with the decree's provisions until the year 2002.  The decree sets forth the Met Council's agreement with the NAACP and the Hollman class that it will alter its policies and practices with respect to housing, wastewater facilities, and transportation in the Twin Cities' metropolitan area.  Further, the Hollman decree includes a general release barring relitigation by any party of "any matters alleged in this action."

In this suit, the NAACP and the student class seek state injunctive relief against the Met Council concerning the very matters the Hollman decree governs.  Although this class action is not removable under the federal removal statutes, the district court was confronted with a situation where parties subject to the district court's continuing jurisdiction under the Hollman decree--the NAACP and those student class members belonging to the Hollman class--were resorting to a state forum to relitigate settled and released claims.  Faced with this circumstance, we believe the district court was warranted in authorizing removal from state court under the All Writs Act to protect the

-4-

integrity of the federal consent decree entered in <u>Hollman</u>, <u>see</u> <u>In re Agent Orange Prod. Liab. Litig.</u>, 996 F.2d 1425, 1431 (2d Cir. 1993), even though removal also brought into federal court those members of the student class who were not involved in <u>Hollman</u>, <u>see</u> <u>New York Tel. Co.</u>, 434 U.S. at 174 (federal court's power under All Writs Act may encompass "persons who [were] not parties to the original action").  <u>See also</u> <u>In re VMS Sec. Litig.</u>, 103 F.3d 1317, 1323-24 (7th Cir. 1996) (approving removal under All Writs Act to enforce orders against relitigation and to guard integrity of earlier rulings over which district court retained jurisdiction); <u>Sable v. General Motors Corp.</u>, 90 F.3d 171, 175 (6th Cir. 1996) (upholding removal under All Writs Act to protect federal consent decree from conflicting state orders); <u>Yonkers Racing Corp. v. City of Yonkers</u>, 858 F.2d 855, 863-65 (2d Cir. 1988) (holding removal proper under All Writs Act to protect integrity of federal consent decree and because issues raised in state suit were inseparable from relief provided by the decree); <u>but see</u> <u>Hillman v. Webley</u>, 115 F.3d 1461, 1469 (10th Cir. 1997) (holding All Writs Act may not be used as basis for removal, but district court may "enjoin parties before it from pursuing conflicting litigation in the state court").  Further, if we held these claims unremovable under the All Writs Act, any state-court orders affecting the Met Council inconsistent with the <u>Hollman</u> decree "would be subject to the injunctive powers of the federal court under the exception provisions of the Anti-Injunction Act." <u>Yonkers</u>, 858 F.2d at 864.  Given the choices available to the district court, we think removal in this case better preserves state-federal relations than would later resort to an injunction because it spares the Hennepin County District Court from expending judicial resources to no avail.  Because we conclude removal was proper under the All Writs Act, we need not determine whether removal was also warranted under the artful pleading doctrine.

Having decided the district court properly exercised removal jurisdiction over claims asserted against the Met Council, we now turn to the district court's res judicata dismissal of those claims as precluded by <u>Hollman</u>.  Our review is de novo, on both procedural and substantive grounds.  <u>See</u> <u>Coleman v. Watt</u>, 40 F.3d 255, 258 (8th Cir. 1994) (appeal from dismissal under Rule 12(b)(6)); <u>Poe v. John Deere Co.</u>, 695 F.2d

1103, 1105 (8th Cir. 1982) (federal law governs res judicata effect of an earlier federal judgment based on federal law). Under the doctrine of res judicata, or claim preclusion, "'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" United States v. Gurley, 43 F.3d 1188, 1195 (8th Cir. 1994) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). Specifically, the earlier Hollman litigation precludes claims against the Met Council in this lawsuit if (1) the earlier suit resulted in a final judgment on the merits, (2) the earlier suit was based on proper jurisdiction, (3) both suits involved the same cause of action, and (4) both suits involved the same parties or their privies. See United States EPA v. City of Green Forest, Ark., 921 F.2d 1394, 1403 (8th Cir. 1990). A consent decree is a final judgment on the merits, see id., and no one challenges the jurisdiction of the Hollman court. Consequently, this appeal turns on whether this suit involves the same cause of action against the Met Council, and the same parties or their privies, as in Hollman.

Initially, the NAACP and the student class contend this suit and Hollman involve different causes of action because Hollman claimed Fair Housing Act violations while this suit asserts violations of a right to an adequate education under the Minnesota Constitution. This argument misses the mark. The same cause of action framed in terms of a new legal theory is still the same cause of action. See Gurley, 43 F.3d at 1195. The claims against the Met Council in this suit involve the same cause of action as the claims against the Met Council in Hollman if both sets of claims "'arise[] out of the same nucleus of operative facts.'" Id. (quoting Lane v. Peterson, 899 F.2d 737, 742 (8th Cir. 1990)). "In the final analysis, the test [is] whether the wrong for which redress is sought is the same in both actions." Id. at 1196 (internal quotations omitted; emphasis in Gurley). As against the Met Council, this suit seeks what Hollman sought: to end the claimed segregative effect of the Met Council's policies and practices concerning housing and related infrastructure projects in the Twin Cities' metropolitan area. Despite the argument of the NAACP and the student class to the contrary, the fact their complaint alleges the Met Council failed "to coordinate school

-6-

desegregation/integration efforts with the housing, social, economic, and infrastructure needs of the metropolitan area" does not affect our conclusion that, as far as the claims against the Met Council are concerned, this suit and <u>Hollman</u> involve the same cause of action.  The "failure to coordinate" claim pertains to one of the state defendants, the Office of Desegregation/Integration in Minnesota's Department of Education, because that Office, not the Met Council, shoulders the statutory responsibility for undertaking coordination efforts.  <u>See</u> Minn. Stat. Ann. § 121.1601 (West Supp. 1997) (creating Desegregation Office and prescribing its duties).  Otherwise, neither the plaintiffs' complaint nor their brief suggests the Met Council bears any responsibility for public education under Minnesota law.

Finally, we must determine whether this suit and <u>Hollman</u> involve the same parties or their privies.  The NAACP was a party to <u>Hollman</u>, and it brought this suit on behalf of the student class.  As defined in the plaintiffs' complaint, the student class necessarily includes students who live in low-income housing and belong to the <u>Hollman</u> class.  We cannot determine the extent of class overlap, but it may be extensive because the plaintiffs' complaint states "the Minneapolis public schools have an extraordinary proportion of children living in poverty among their student populations," an assertion we must accept as true.  <u>See Coleman</u>, 40 F.3d at 258.  Given the two classes overlap but are not identical, the question we must answer is whether the student class in this case is in privity with the <u>Hollman</u> class.

Because the student class in this suit neither controlled the <u>Hollman</u> action nor are successors-in-interest to the <u>Hollman</u> class, the resolution of the privity issue depends on whether the student class was adequately represented in the earlier action by the <u>Hollman</u> class.  <u>See Tyus v. Schoemehl</u>, 93 F.3d 449, 454 (8th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1427 (1997).  In this circuit, "'a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with [the person's] interests as to be [that person's] virtual representative.'"  <u>Id.</u> (quoting <u>Aerojet-General Corp. v. Askew</u>, 511 F.2d 710, 719 (5th Cir. 1975)).  Nonparty preclusion

based on virtual representation involves an equitable, case-by-case inquiry, and there is no clear test for courts to apply. See id. at 455. Nevertheless, analyzing a particular case in light of the factors the court identified in Tyus enables us to "ensure that the relationship between the party to the original suit and the party sought to be precluded in the later suit is sufficiently close to justify preclusion." Id. at 454.

Although not enough by itself, identity of interests between the parties is essential. See id. at 455. This requirement is satisfied here. As against the Met Council, the interests of the Hollman class and the student class are virtually the same. The only difference is the Hollman class sued the Met Council to secure broader geographical distribution of low-income housing as an end in itself, while the student class seeks the same relief against the Met Council as a means to the end of improving education. Furthermore, the Hollman class adequately represented the interests it shares with the student class because the Hollman class had a powerful incentive to establish the segregative effects of the Met Council's housing policies and practices. See id. at 455-56. After all, the Hollman class could not prevail in its lawsuit against the Met Council without successfully litigating the same kind of claims raised against the Met Council by the student class in this case. Although incentive to litigate, not results, is the key, see id. at 458, the Hollman plaintiffs secured commitments of more than $100 million to promote the spread of low-income housing in the Twin Cities' metropolitan area--which in turn, according to the plaintiffs' complaint in this suit, will improve educational achievement in the Minneapolis schools.

Because the memberships of the student and Hollman classes overlap, it is clear to us the parties in the two suits are not strangers to one another. Indeed, the student members of the Hollman class actually participated in that litigation. See id. at 455. Adding these considerations to the two classes' closely aligned interests, and the Hollman class's incentive to protect those interests in the earlier suit, we are satisfied that the members of the student class were adequately represented by, and thus are in

privity with, the <u>Hollman</u> class.  Accordingly, the district court properly dismissed the claims against the Met Council as precluded by <u>Hollman</u>.

We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.