**UNITED STATES of America, Allied Products Corporation, Appellees,**

**v.**

**TIC INVESTMENT CORPORATION, TIC United Corporation, and Stratton Georgoulis, Appellants.**

No. 95–1035.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1995.

Decided Oct. 16, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 3, 1996.

Laurence K. Gustafson, Dallas, TX, argued for appellant (Lawrence A. Gaydos and Alan Wright, on brief).

Robert L. Driscoll, Kansas City, MO, argued for appellee Allied Products (Stephen J. Owens and Russell A. Berland, on brief) and Vicki L. Plaut, Washington, D.C., argued for appellee United States (Albert M. Ferlo and Sean Carman, on brief).

Before McMILLIAN and LOKEN, Circuit Judges, and VAN SICKLE,* District Judge.

McMILLIAN, Circuit Judge.

TIC Investment Corp. (TICI), TIC United Corp. (TICU), and Stratton Georgoulis (collectively defendants) appeal from two interlocutory orders entered in the United States District Court for the Northern District of Iowa, granting partial summary judgment in favor of Allied Products Corp. (Allied), *United States v. TIC Investment Corp.*, 866 F.Supp. 1173 (N.D.Iowa 1994), and the United States of America, *id.*, No. C91–2065 (Dec. 1, 1994), on the issue of defendants' potential liability as "arrangers" under § 107(a)(3) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607(a)(3).[1] The district court held that defendants were directly liable as arrangers under CERCLA in connection with the disposal of wastes containing hazardous substances produced by the White Farm Equipment Co. (WFE) during the years 1980 to 1985. Upon granting partial summary judgment on the issue of defendants' liability, the district court certified its orders for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *United States v. TIC Investment Corp.*, No. C91–2065 (Nov. 30, 1994) (certifying order granting partial summary judgment for Allied); *id.* (Dec. 1, 1994) (certifying order granting partial sum-

---

* The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota, sitting by designation.

1. Section 9607(a)(3) provides in pertinent part: any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person ... shall be liable for [response costs].

mary judgment for the United States). For reversal, defendants argue that the district court erred in holding that (1) a corporate officer or director can be individually liable under CERCLA as an arranger of the disposal of hazardous substances without proof of any intentional participation in the arrangement for disposal of the hazardous substances and (2) a parent corporation can be liable as an arranger of the disposal of hazardous substances owned or possessed by the parent corporation's subsidiary without proof of any intentional participation by the parent corporation in the arrangement for disposal of the hazardous substances. For the reasons discussed below, we affirm in part and reverse in part and remand to the district court for further proceedings.

## I. Background

The following summary of facts is largely taken from the district court's published opinion and order. 866 F.Supp. at 1175–77, 1180–81, 1183–84. From 1971 through 1985, WFE owned and operated a farm implement manufacturing plant in Charles City, Iowa. The WFE plant produced wastes containing hazardous substances, which were disposed of at a nearby location (the dumpsite) which was owned by H.E. Construction Co. (HEC). During a period including the years 1980 to 1985, HEC transported WFE's wastes to the dumpsite, charging WFE on a per load basis. In 1979, WFE entered into a lease agreement with HEC whereby WFE leased the dumpsite from HEC for a two-year period in exchange for $1.00. After the lease expired, it was not renewed, but WFE continued to use the dumpsite for disposal of its wastes.

In November 1980, TICI purchased WFE out of the bankruptcy reorganization of WFE's then-parent corporation, White Motors Corp. At that time, and at all relevant times thereafter, Georgoulis was the sole shareholder, president, and chairman of the board of TICI. During the period from December 1980 through October 1985, the corporate structure was as follows. WFE was wholly owned by an investment holding company, White Farm U.S.A., Inc. (WF USA), which in turn was wholly owned by a holding company, White Farm Industries, Inc.

(WFI). During approximately the first year of the relevant time period, WFI was wholly owned by TICI, a holding company. For the remaining four years, WFI was wholly owned by TICU, also a holding company. Georgoulis was, at all relevant times, the sole shareholder of TICI and TICU. TIC Services Co. (TIC Services), a subsidiary of TICI, provided various corporate services to TICI and TICU and their subsidiaries. These services included insurance, accounting, legal and tax work, and payment of employee salaries. During the years from 1980 to 1985, Georgoulis was, as previously noted, president and chairman of the board of TICI, president and chairman of the board of TICU, and president and chairman of the board of TIC Services. (Hereinafter, TICI, TICU, and TIC Services are collectively referred to as the TIC entities.) Georgoulis was also chairman of the board of WFE, chairman of the board of WF USA, and chairman of the board of WFI. He was president of WFE for part of the five-year period in question. On two separate occasions, Georgoulis hired another person as WFE president; each served nominally for about one year before being fired by Georgoulis.

We assume, for purposes of this appeal, that neither Georgoulis nor any employee of the TIC entities had personal knowledge of the contract between WFE and HEC for the disposal of WFE's wastes at the dumpsite. Nor did Georgoulis or any employee of the TIC entities have any personal knowledge of the disposal practices at the dumpsite, or was in any way directly involved in waste disposal matters. However, it is beyond genuine dispute that, at all relevant times, Georgoulis had authority to control, and did in fact exert direct control over many significant aspects of the ongoing operations and management of WFE. Georgoulis, whose TICI and TICU offices were located in Dallas, Texas, was often present in WFE's corporate offices in Oakbrook, Illinois; at other times, Georgoulis talked daily, if not several times a day, with the WFE officers at the Oakbrook office. Georgoulis was directly involved in personnel matters including union contract negotiations, manpower reductions, pension benefits for nonunion WFE employees, and insurance

benefits for WFE retirees. He had final authority over the areas of manpower and staffing at WFE. He also made the decision to close and consolidate some of WFE's operations in other parts of the country. From 1980 to 1983, Georgoulis was not only the chairman of the board of WFE, he was also one of only two WFE board members, which ensured that no action of the board could take place without his approval.

It is also not genuinely disputed that an active working relationship existed between the parent corporations, TICI and TICU, and their subsidiary, WFE. For example, TICI and TICU management took part in lowering labor and personnel costs at WFE. One of the TIC holding companies guaranteed a $15 million working capital loan for WFE and arranged for WFE's lines of credit. TIC Services charged WFE a corporate fee for corporate services; for a portion of the relevant time period, TIC Services charged (but did not collect) a fee containing a 40% increase over WFE's proportional share. Also, for the years 1982 and 1983, TIC Services paid the salaries of the chief executive officer of WFE and billed WFE for reimbursement.

In 1983, the major lender for WFE, Borg–Warner Acceptance Corp. (BWAC), entered into a capital and revolving loan agreement for the refinancing of WFE and, at that time, required WFE to expand its Board of Directors to five members. However, even after that time, Georgoulis continued to serve on the board of directors and remained chairman of the board. WFE defaulted on its loan from BWAC in May 1985. Consequently, BWAC became owner of all of WFE's assets, which BWAC sold to Allied in October 1985.

In 1988, the United States Environmental Protection Agency placed the dumpsite on the National Priorities List and began remediation at the site. *See* 42 U.S.C. § 9605(a)(8)(B); 40 C.F.R. Part 300, App. B

(1993). The United States and Allied have each incurred response costs in connection with the remediation effort and each has brought a separate cost recovery action against defendants, pursuant to CERCLA, 42 U.S.C. § 9601 *et seq.* On cross-motions for summary judgment, the district court entered partial summary judgment holding that defendants were directly liable as arrangers of disposal at the dumpsite, within the meaning of § 9607(a)(3).[2] *United States v. TIC Investment Corp.,* 866 F.Supp. at 1178–84. Following the district court's certification under 28 U.S.C. § 1292(b), defendants appealed.

## II. Discussion

### A. *Summary judgment standard*

We review a grant of summary judgment *de novo.* The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992); *St. Paul Fire & Marine Ins. Co. v. FDIC,* 968 F.2d 695, 699 (8th Cir.1992). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Crain v. Board of Police Comm'rs,* 920 F.2d 1402, 1405–06 (8th Cir.1990).

### B. *Arranger liability under CERCLA*

On this appeal, there is no dispute that the dumpsite is a facility within the meaning of CERCLA, that a release or threatened release of a hazardous substance from the

---

**2.** Because the district court did not reach the United States' alternative theory of derivative liability under the doctrine of piercing the corporate veil, we decline to express any opinion on that theory at this time. However, we note that this court has previously indicated, in dicta, that corporate veil-piercing may be appropriate where " 'the corporation is something less than a bona fide independent entity.' " *United States v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d 726, 744 (8th Cir.1986) (*NEPACCO* ) (citing *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 606 (3d Cir.1978)), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987).

dumpsite has occurred, and that the release or threatened release has caused the United States and Allied to incur response costs. 866 F.Supp. at 1177. The only disputed question on appeal is whether, as a matter of law, defendants fall within one of the four classes of responsible persons under 42 U.S.C. § 9607(a). *Id.* Generally speaking, the four categories of persons who are legally responsible under CERCLA for the cleanup of hazardous substances at a given facility are: (1) those who own and operate the facility at the time a release or threatened release exists; (2) those who owned or operated the facility at any time when hazardous substances were disposed of at the facility; (3) those who arranged for disposal or treatment, or arranged for transport for disposal or treatment, of hazardous substances which they owned or possessed; and (4) those who transported hazardous substances to the facility. 42 U.S.C. § 9607(a). Our focus is on whether defendants fall within the third category of responsible persons described as "arrangers." Given the undisputed facts that WFE at all relevant times was wholly owned by either TICI or TICU, and that at all relevant times Georgoulis was the sole shareholder of TICI and TICU, there is no dispute that the hazardous substances disposed of at the dumpsite were owned by defendants. We need only decide whether or not defendants "arranged for" disposal of hazardous substances at the dumpsite during the years 1980 to 1985, within the meaning of CERCLA, 42 U.S.C. § 9607(a)(3).

There are several cases from our circuit in which arranger liability under 42 U.S.C. § 9607(a)(3) has been litigated. *See, e.g., United States v. Vertac Chem. Corp.*, 46 F.3d 803 (8th Cir.) (*Vertac* ), *cert. denied,* — U.S. ——, 115 S.Ct. 2609, 1132 L.Ed.2d 853 (1995); *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373 (8th Cir.1989) (*Aceto* ); and *United States v. Northeastern Pharmaceutical & Chem. Co.*, 810 F.2d 726 (8th Cir.1986) (*NEPACCO* ), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). Nevertheless, the precise issues before us, involving individual and corporate liability, have never been addressed. Upon careful *de novo* review, we agree with the district court's conclusion that Allied and the

United States are entitled to summary judgment on the issue of Georgoulis's arranger liability as a corporate officer of WFE, although our reasons for reaching this conclusion differ from those of the district court. We disagree, however, with the district court's conclusion that Allied and the United States are entitled to summary judgment on the issue of TICI and TICU's arranger liability as parent corporations of WFE.

C. *Arranger liability of Georgoulis as a corporate officer*

"CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3), imposes strict liability upon 'any person' who arranged for the disposal or transportation for disposal of hazardous substances. As defined by the statute, the term 'person' includes both individuals and corporations and does not exclude corporate officers or employees." *NEPACCO*, 810 F.2d at 743. Relying on *NEPACCO* and cases from other circuits, the district court held that the proper standard to be applied in assessing a corporate officer's potential liability as an arranger is the same as that which is used to determine operator liability under § 9607(a)(2), and that standard is an "authority to control" test. 866 F.Supp. at 1179. The district court added, however, that there must also be some "showing that the defendant actually exercised his or her authority" over the operations of the corporation; this additional requirement, the district court explained, "is to establish that the defendant was not a mere figurehead, and that he or she played more than a passive role in the corporation." *Id.* at 1180. The district court thus concluded in the present case that "[d]ue to Georgoulis' authority to control WFE and his actual exercise of control over WFE, he is directly liable as an arranger under CERCLA." *Id.* at 1181. The district court reached this conclusion notwithstanding the fact that there was no evidence that Georgoulis had any personal knowledge of WFE's waste disposal practices. *Id.* at 1176.

Defendants argue that the case law makes an important distinction between, on the one hand, the strict liability that attaches once a person is found to be within one of the four categories of responsible persons under

CERCLA and, on the other hand, the intent requirement that necessarily underlies a finding that a person is within one of those categories. For a person to be classified as an arranger, defendants argue, the law requires that the person "take[ ] some intentional action to arrange for disposal of a hazardous substance." Brief for Appellants at 9 (citing *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 751 (7th Cir.1993) (*Amcast*) ("The words imply intentional action."), *cert. denied,* —— U.S. ——, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994)).[3] Defendants maintain that they did not engage in intentional action in the present case because neither Georgoulis nor any employees of the TIC entities had any personal knowledge of the HEC disposal contract or the disposal practices at the dumpsite, nor did they actively participate in any waste disposal decisions.

Addressing cases from this circuit, defendants suggest that this court should not rely on the literal meaning of the following isolated sentence from *NEPACCO:* "It is the authority to control the handling and disposal of hazardous substances that is critical under the statutory scheme." 810 F.2d at 743. Defendants argue that *NEPACCO,* on its facts, is clearly distinguishable from the case at bar because the employee in *NEPACCO,* who was found to be liable as an arranger, "actually knew about, had immediate supervision over, and was directly responsible for arranging for the transportation and disposal of the NEPACCO plant's hazardous substances." *Id.* Moreover, defendants argue, since *NEPACCO,* this court has specifically held that the mere authority to control disposal or treatment does not, in and of itself, establish arranger liability. *Vertac,* 46 F.3d at 810 (mere authority to control disposal activities does not create arranger liability;

"[o]ur holding in *NEPACCO,* when read in the context of the facts of the case, certainly does not suggest such a broad interpretation"). Defendants also argue that the district court's interpretation of *NEPACCO* is inappropriate in light of *United States v. Gurley,* 43 F.3d 1188 (8th Cir.1994) (*Gurley* ) (affirming finding that individual employee was liable as an operator under 42 U.S.C. § 9607(a)(2)), *cert. denied,* —— U.S. ——, 116 S.Ct. 73, 133 L.Ed.2d 33 (1995). In *Gurley,* this court commented:

> an individual may not be held liable as an "operator" under § 9607(a)(2) unless he or she (1) had authority to determine whether hazardous wastes would be disposed of and to determine the method of disposal and (2) actually exercised that authority, either by personally performing the tasks necessary to dispose of the hazardous wastes or by directing others to perform those tasks.

43 F.3d at 1193. In *Gurley,* this court further described its statement of the law on individual operator liability as "faithful to our closely analogous decision in *NEPACCO.*" *Id.* Finally, defendants argue that *Aceto* is inapplicable to the present case. Defendants argue that *Aceto* falls within a line of cases in which the controlling issue involved whether the object of a putative arrangement was either a disposal or a sale (or some other use) of the materials containing hazardous substances. By contrast, defendants argue, the issue here is whether they ever intentionally participated in any arrangement.

We agree with defendants' argument that, in the wake of *Gurley* and *Vertac,* a finding of arranger liability requires some level of actual participation in, or exercise of control over, activities that are causally connected to, or have some nexus with,[4] the arrangement

3. Upon a careful reading of *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994), we find that it does not support defendants' position here because, in that case, the Seventh Circuit reasoned that arranger liability did not exist where there was *no arrangement. Id.* at 751 (where disposal occurred as a result of an accidental spill by a transporter, the person that hired the transporter did not "arrange for" the disposal). In the present case, however, it is undisputed that there was an arrangement for HEC to dispose of WFE's wastes at the dumpsite.

4. Based upon this notion of a "nexus," some courts have recognized that arranger liability can be established, absent any active involvement related to the disposal or arrangement for disposal of hazardous substances, where the defendant had the *obligation* to exercise control over the disposal or arrangement for disposal of hazardous substances. *Cf. General Elec. Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281, 286–87 (2d Cir.1992) (affirming summary judgment in favor of defendant oil companies on issue of their potential arranger liability where "the undisputed facts demonstrate[d] that the oil companies

for disposal of hazardous substances or the off-site disposal itself. Defendants have taken this proposition one step further, however, by arguing that, as a matter of law, arranger liability requires proof that the person had the specific intent to arrange for the disposal of hazardous substances. If this were the proper standard, the district court's summary judgment disposition would be improper because the United States and Allied were unable to adduce any evidence showing that defendants ever participated in, or had any knowledge of, the arrangement for disposal of WFE's hazardous wastes at the dumpsite. We reject defendants' specific intent argument for the following reasons.

As noted by the district court, Congress's goals in enacting CERCLA were "(1) to ensure that those responsible for the problems caused by hazardous wastes are required to pay for the clean-up costs ... and (2) to ensure that responsible persons are not allowed to avoid liability by remaining idle." 866 F.Supp. at 1177 (citations omitted). Consistent with these goals, this court in *Aceto* rejected the notion that generators of hazardous substances could simply "close their eyes" to the method of disposal of their hazardous substances to avoid any liability for response costs. 872 F.2d at 1382. Contrary to defendants' assertions, *Aceto* undermines their legal argument. The defendants in *Aceto* argued that the allegations in the complaint were insufficient to state a claim under § 9607(a)(3), where the defendants had allegedly contracted to have another party "formulate," rather than "dispose of,"

technical grade pesticides containing hazardous substances. 872 F.2d at 1379. This court was persuaded by the argument that the defendants knew or should have known that "because the generation of pesticide-containing wastes is inherent in the pesticide formulation process, Aidex [the party with which the defendants contracted] could not formulate defendants' pesticides without wasting and disposing of some portion of them." *Id.* at 1379. Thus, this court implicitly rejected a specific intent requirement and held that the complaint adequately alleged that the defendants had arranged for disposal of hazardous substances. *Id.* at 1181.

Similarly, upon a careful reading of *Gurley*, we find that this court's decision in that case supports the district court's finding of Georgoulis's liability as an arranger in the present case. As noted above, this court held, in *Gurley*, that a particular individual employee was liable as an operator under CERCLA, 42 U.S.C. § 9607(a)(2), because that individual (1) had the authority to determine whether hazardous wastes would be disposed of and the method of disposal and (2) actually exercised that authority, either by personally performing the tasks necessary to dispose of the hazardous wastes or by directing others to perform those tasks. 43 F.3d at 1193. Notably, that individual in *Gurley* was a non-officer, non-director, non-shareholder employee. *Id.* at 1194. The holding in *Gurley* must be viewed in this context.[5] Indeed, in attempting to define the

---

had no obligation to exercise control over the manner in which their dealers disposed of waste motor oil").

5. We also note that the finding of individual liability in *United States v. Gurley*, 43 F.3d 1188 (8th Cir.1994) (*Gurley*), *cert. denied*, ——— U.S. ———, 116 S.Ct. 73, 133 L.Ed.2d 33 (1995), was based upon the fact that the appellant had himself personally participated in the disposal activities at the facility in question, which was a borrow pit used for disposal of wastes containing hazardous substances. The court therefore was not faced with the issue of whether, or under what circumstances, an individual could be found personally liable in the absence of any personal participation in the disposal activities. Clearly, the standard mentioned in *Gurley* would not apply generally in all individual operator liability cases. For example, it might not apply

where the primary function of the facility at the time of disposal was manufacturing, rather than disposal. *Compare United States v. Vertac Chem. Corp.*, 46 F.3d 803, 806–07 (8th Cir.) (*Vertac*), *cert. denied*, ——— U.S. ———, 115 S.Ct. 2609, 132 L.Ed.2d 853 (1995) (at time of disposal, facility was a plant where Agent Orange was manufactured) *with Gurley*, 43 F.3d at 1190 (at time of disposal, facility was a borrow pit used primarily for waste disposal). The relevant owner and operator provision of CERCLA provides in pertinent part:

any person who at the time of disposal of any hazardous substance *owned or operated any facility at which such hazardous substances were disposed of* ... shall be liable for [response costs.]

42 U.S.C. § 9607(a)(2) (emphasis added).

This provision in CERCLA merely requires that the person in question own or operate the facility

outer limits of individual operator liability for mere employees, this court specifically recognized that "[p]erhaps persons who are officers, directors, or shareholders are more likely to cause a company to dispose of hazardous wastes." *Id.* Nevertheless, defendants now urge us to take language from *Gurley* out of context to conclude that Georgoulis cannot be personally liable as an arranger absent proof of his personal involvement in the arrangement for disposal, notwithstanding the facts that he was an officer, director, and shareholder and that he had the authority to control—and did in fact control—practically every major aspect of WFE's operations. From a policy standpoint, such a holding would violate the goals underlying CERCLA by creating a loophole for powerful individuals like Georgoulis. A corporate officer, who has virtually unlimited control over a company and in fact exercises that control but knows well enough to close his or her eyes to the specific details of the company's hazardous waste disposal practices, could avoid CERCLA liability; meanwhile, the employee charged with the job of actually carrying out the disposal activities or making the disposal arrangements—even if he or she has no meaningful decisionmaking authority—could *not* avoid personal liability. "CERCLA places the ultimate responsibility for clean up on 'those *responsible* for problems caused by the disposal of chemical poisons.'" *Aceto*, 872 F.2d at 1377 (emphasis added) (citing *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir.1986)).[6]

Therefore, based upon our understanding of CERCLA, and our interpretation of the case law from our circuit, we hold that arranger liability under § 9607(a)(3) does not impose the specific intent requirement urged by defendants. We agree with the United States' argument that defendants' proposed specific intent standard would

> insulate[ ] from liability those who own and intrusively run organizations, those who effectively dictate their hazardous waste decisions through day-to-day strict control of budgets, production, and capital investment, those who strip the company of its cash and its independent decision-making, but who do not trouble themselves with the cost-cutting disposal practices of their company.

Brief for Appellee United States at 36.

■ We now hold that the proper standard to be applied in this case imposes direct arranger liability on a corporate officer or director if he or she had the authority to control and did in fact exercise actual or substantial control, directly or indirectly, over the arrangement for disposal, or the off-site disposal, of hazardous substances. We part company with the district court in interpreting § 9607(a)(3) insofar as the district court held "[w]hether an individual chooses to exercise all the authority he or she has over a corporation is *not* relevant under the statutory scheme as one purpose of CERCLA is to encourage those individuals with the power to do so, to take action to abate the damage caused by hazardous waste disposal." 866 F.Supp. at 1180 (emphasis added). Our

at which hazardous substances are disposed of, at the time of disposal; nowhere does this subsection require that the person be involved in the disposal activities themselves. Likewise, as the case parentheticals in *Gurley* indicate, *see* 43 F.3d at 1193, the courts which have held that the actual exercise of authority is a requirement of operator liability have recognized that it is sufficient for the person to have exercised authority or control over the *operations* of the facility. Consistent with the plain meaning of the § 9607(a)(2), none have *required* the person to have exercised authority or control over the disposal activities, although such conduct would, in most instances, satisfy the "actual control" requirement.

6. We also note that under the analysis in *Vertac*, 46 F.3d at 807–09, Georgoulis's level of control

over the operations of WFE would have been enough to establish his operator liability if the disposal had occurred on WFE's own property. In *Vertac*, this court held that the United States was not an operator because it did not actually or substantially exercise control over the operations or affairs of the facility where hazardous wastes had been disposed. *Id.* at 811 ("the United States' actual involvement in the operations of the Jacksonville facility was sporadic and minimal"). By contrast, Georgoulis was regularly and substantially involved in virtually every aspect of the operations at the WFE site. The facts that WFE shipped its hazardous substances off-site and Georgoulis turned a blind eye to the specific details of the disposal arrangement should not, in this instance, shield him from liability.

holding today recognizes that, for purposes of determining arranger liability under § 9607(a)(3), whether an individual exercises his or her authority over a corporation which generates and arranges for the disposal, treatment, or transportation of hazardous substances, *is* relevant under the statutory scheme. For arranger liability to attach to a corporate officer or director, there must be some actual exercise of control, *and* it must include the exercise of some control, directly or indirectly, over the arrangement for disposal, or the off-site disposal, of hazardous substances.[7] By adopting this stricter standard, our holding today dispels defendants' argument that

> it can legitimately be said that every chief executive officer of every corporation has the ultimate authority to control every matter in the corporation. In actual practice, however, corporate decision making involves delegation of authority and reliance on the judgment of others. The effect of the District Court's Order is that any officer of a corporation who has contract authority can be held liable as a person who "arranged for disposal" of that corporation's waste.

Brief for Appellants at 14 n. 4.

■ In the present case the undisputed facts reveal that Georgoulis did not simply delegate authority and rely on the judgment of others; as a practical matter, his mandates left no room for others to exercise any decisionmaking authority or judgment in any area of the business, including hazardous waste disposal. Had Georgoulis truly dele-

gated authority to others and allowed those individuals to exercise their judgment with respect to WFE's waste disposal practices without his interference, he would not be liable as an arranger under the standard we have adopted today. In the present case, however, the undisputed facts show that Georgoulis had the authority to control virtually every aspect of WFE's operations and did in fact directly control many aspects of WFE's operations and indirectly control others. We find it beyond dispute that Georgoulis, in his capacity as board chairman and chief executive officer of WFE, so usurped the power of those who were only nominally running WFE that he undertook responsibility for all of WFE's decisionmaking; he so tightly controlled WFE, particularly its budgetary aspects, that he left WFE employees no other choice but to continue with the relatively inexpensive arrangement that had historically existed between WFE and HEC.[8] In other words, Georgoulis's actions inexorably led to the continuation of the disposal of WFE's wastes at the dumpsite. It is therefore beyond genuine dispute that he exercised substantial indirect control over the disposal arrangement. We base this conclusion upon a fact-intensive examination of the totality of the circumstances. *Cf. Vertac,* 46 F.3d at 808 (actual control test for determining operator liability "requires a fact-intensive inquiry and consideration of the totality of circumstances"). The lack of evidence showing that Georgoulis was personally involved in, or aware of, the details of the disposal arrangement does not bar his liability.

---

7. This standard differs from the standard for finding operator liability arising out of the exercise of control by one entity over another. To establish arranger liability, the exercise of control must be causally related to the arrangement for disposal, or the off-site disposal, rather than merely the operations or activities of the ostensible arranger. The language of CERCLA's arranger subsection specifically requires that one arrange for disposal or treatment, or arrange for transportation for disposal or treatment. 42 U.S.C. § 9607(a)(3). The language related to operator liability, by contrast, merely requires that one operate the facility at which hazardous substances are disposed of, at the time of the disposal; it does not require any involvement in the disposal activities themselves. 42 U.S.C. § 9607(a)(2).

8. We think these facts are abundantly clear based upon our review of the affidavits and depositions in the record which contain unequivocal statements by former WFE employees demonstrating that (1) Georgoulis completely dominated all of the decisionmaking at WFE and did not delegate any decisionmaking responsibility to others, (2) his WFE employees were under strict instructions not to increase WFE's costs and to do everything possible to reduce costs across the board, and (3) when they did not do exactly what Georgoulis expected, he terminated them. *See, e.g.,* Joint Appendix, Vol. IV at 772, 775–79, 783, 786, 789 (deposition of Emerson P. Barrett); Vol. VII at 1594, 1596–1600 (deposition of David Finatri); Vol. VII at 1603, Vol. XIII at 3218 (deposition of Robert Fuller); Vol. VII at 1605–07 (declaration of Robert Fuller).

Thus, upon *de novo* review, we hold that the district court did not err in holding as a matter of law that Georgoulis was an arranger under CERCLA, 42 U.S.C. § 9607(a)(3). Accordingly, we affirm the ruling of the district court granting summary judgment on this issue.

D. *Arranger liability of TICI and TICU as parent corporations*

On the issue of TICI and TICU's arranger liability as corporate parents of WFE, the district court held "CERCLA policy dictates a finding of liability where the parent has gone beyond an investment relationship with the subsidiary and has exerted actual control over the subsidiary's activities." 866 F.Supp. at 1182. The district court reasoned:

> This court finds it appropriate to use case law discussing parent corporation liability as an operator to determine liability as an arranger. Where as here, the question of liability concerns a corporation which is producing the hazardous waste and disposing of it off corporate property, this court finds that it would open a wide hole in CERCLA law should such a corporation be treated differently than a corporation which disposed of its hazardous waste on its own property. The use of the "actual control" test, to also assess arranger liability, ensures that a parent corporation who is active within certain areas of its subsidiary's activities is not encouraged to ignore

the hazardous waste practices of the subsidiary.

*Id.* Based upon this reasoning, the district court concluded that the test for parent liability used in operator cases should apply equally in arranger cases. We disagree.

■ We reject the district court's conclusion that the standard for determining whether a parent corporation is liable as an operator applies equally when considering arranger liability because the statutory requirements for each of these two classifications under CERCLA (i.e., operators and arrangers) are significantly different. In other words, the statute itself sets forth different requirements with respect to operator liability and arranger liability, *see* note 7 *supra*, which must be carefully considered in this context. The critical distinction between operator liability under § 9607(a)(2) and arranger liability under § 9607(a)(3), for purposes of this parent corporation liability analysis, is that subsection (a)(2) requires only that the person operate the facility where disposal occurs at the time of the disposal; by contrast, subsection (a)(3) requires that the person arrange for the disposal, treatment, or transportation for disposal or treatment. Therefore, while a parent corporation need only have the authority to control, and exercise actual or substantial control, over the operations of its subsidiary to incur direct operator liability for the subsidiary's on-site disposal practices,[9] we believe that, in

9. When discussing the standard for liability under the operator provision in § 9607(a)(2), we have indicated, by analogy, that a parent corporation may be directly liable for activities carried out ostensibly by its subsidiary if the parent corporation, in effect, actually operated the subsidiary's facility by having the authority to control and actually or substantially controlling the facility at which the disposal occurred, at the time of the disposal. *Cf. Vertac*, 46 F.3d at 807–09 (United States not liable as operator of government contractor where it "was not sufficiently involved, directly or indirectly, in the activities that took place at the Jacksonville facility to constitute actual or substantial control"). Several other circuits which have addressed the issue in the corporate context have adopted a similar standard. *See Lansford–Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1221–22 & n. 13 (3d Cir.1993) (adopting actual control standard for operator liability; corporations are accountable when they are not mere investors in other corporations, but instead have actively and substantial-

ly participated in the affiliated corporation's management); *Jacksonville Elec. Auth. v. Bernuth Corp.*, 996 F.2d 1107, 1110 (11th Cir.1993) (requiring actual and pervasive control of subsidiary; actual involvement in decisions regarding the disposal of hazardous substances is sufficient but not necessary to satisfy this requirement); *United States v. Kayser–Roth Corp.*, 910 F.2d 24, 26–27 (1st Cir.1990) (corporate parent operator liability requires more than ownership and authority or ability to control; it also requires active involvement in the activities of the subsidiary), *cert. denied*, 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991). Two minority views which have been expressed by other circuits in the context of considering operator liability of a parent corporation include (1) that mere authority to control is sufficient to establish liability, *Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 842 (4th Cir.) (authority to control, not actual control, is the appropriate standard; actual conduct is evidence of authority to control but

order for a parent corporation to incur direct arranger liability for a subsidiary's off-site disposal practices, there must be some causal connection or nexus between the parent corporation's conduct and the subsidiary's arrangement for disposal, or the off-site disposal itself.[10]

■ We therefore hold that the standard to be applied in this case imposes direct arranger liability on a parent corporation if the parent had the authority to control and exercised actual or substantial control, directly or indirectly, over the arrangement for disposal, or the off-site disposal, of the subsidiary's hazardous substances. As indicated above with respect to individual arranger liability, application of this standard requires a fact-intensive inquiry, based upon the totality of the circumstances. *Cf. Vertac,* 46 F.3d at 808 (referring to governmental operator liability); *accord Lansford–Coaldale Joint Water Auth. v. Tonolli Corp.,* 4 F.3d 1209, 1220–22 (3d Cir.1993) (referring to corporate operator liability).

■ Turning to the facts of the present case, we note that the district court, in determining that TICI and TICU were liable as arrangers stated "[a]ll of Georgoulis' involvement in WFE ... is applicable to determining parent corporation involvement as Georgoulis was president and chairman of the board of directors for both TICI and TICU." 866 F.Supp. at 1183. Based upon the record before us, we do not find that a sufficient factual basis exists to support this assumption at this stage of the litigation. While we agree that it is beyond genuine dispute that Georgoulis had the authority to control every aspect of WFE's operations, and did in fact directly or indirectly control virtually every aspect of WFE's operations including the arrangement for disposal of its hazardous wastes, it is not clear from the record that he

did so *in his capacity as an officer or director of TICI or TICU.* In fact, the district court's factual basis for holding Georgoulis personally liable, which we will not reiterate here, focuses almost exclusively on Georgoulis's involvement in WFE's affairs *in his capacity as sole stockholder, president, and chairman of the board of WFE. See* 866 F.Supp. at 1180–81. The mere fact that Georgoulis and other individuals who were officers and directors for TICI and TICU concurrently served as officers and directors for WFE, *id.* at 1183–84, does not, in and of itself, tend to establish TICI or TICU's liability. We are thus left to evaluate only those facts relevant to the actual working relationship between the parent corporations, TICI and TICU, and their subsidiary, WFE. Along these lines, the district court noted the following facts: one of the TIC holding companies guaranteed a $15 million working capital loan for WFE and arranged for WFE's lines of credit; the TIC entities charged WFE a corporate fee for corporate services and, for a portion of the relevant time period, this fee contained a 40% increase over WFE's proportional share; TIC Services paid the salaries of the chief executive officer of WFE in 1982 and 1983 and billed WFE for reimbursement; and TICI and TICU filed consolidated tax returns for December 1981 through 1985 which included WFE's finances. 866 F.Supp. at 1176, 1184. However, based upon these facts and our independent review of the record, we cannot say that there is no genuine issue as to whether TICI and TICU exercised actual or substantial control, directly or indirectly, over WFE's waste disposal arrangement with HEC.

Thus, upon *de novo* review in the present case, we hold that the record fails to establish that there are no genuine issues of material fact and that the United States and

---

not a legal requirement), *cert. denied,* —— U.S. ——, 113 S.Ct. 377, 121 L.Ed.2d 288 (1992); and (2) that liability can be established only if the requirements for piercing the corporate veil have been met, *United States v. Cordova Chem. Co.,* 59 F.3d 584, 590–91 (6th Cir.1995) ("a parent corporation incurs operator liability pursuant to section 107(a)(2) of CERCLA, for the conduct of its subsidiary corporation, only when the requirements necessary to pierce the corporate veil are met"); *Joslyn Mfg. v. T.L. James & Co.,* 893 F.2d

80, 83 (5th Cir.1990) (same), *cert. denied,* 498 U.S. 1108, 111 S.Ct. 1017, 112 L.Ed.2d 1098 (1991).

**10.** There may be some instances where arranger liability arises as a result of the parent corporation's *obligation* to exercise control over the disposal or arrangement for disposal of hazardous substances. *See* note 4 *supra.*

Allied are entitled to judgment as a matter of law on the issue of TICI and TICU's liability as arrangers under CERCLA, 42 U.S.C. § 9607(a)(3), in their capacity as parent corporations of WFE. Accordingly, we reverse the ruling of the district court granting summary judgment on this issue.

## III. Conclusion

For the foregoing reasons, we hold that Allied and the United States are entitled to summary judgment on the issue of Georgoulis's arranger liability as a corporate officer of WFE. We further hold that Allied and the United States are not presently entitled to summary judgment on the issue of TICI and TICU's arranger liability as parent corporations of WFE. Thus, the orders of the district court are affirmed in part and reversed in part, and the case is remanded to the district court for further proceedings consistent with this opinion.